[Cite as *Johnson v. Cleveland City School Dist.*, 2012-Ohio-159.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97125

SHARON JOHNSON, Ph.D.

PLAINTIFF-APPELLANT

vs.

CLEVELAND CITY SCHOOL
DISTRICT, ET AL.

DEFENDANTS-APPELLEES

JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case Nos. CV-684948

**BEFORE:**   E. Gallagher, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   January 19, 2012

**ATTORNEYS FOR APPELLANT**

Edward L. Gilbert
Tracee D. Hilton-Rorar
Edward L. Gilbert Co., LPA
One Cascade Plaza
Suite 825
Akron, Ohio   44308


**ATTORNEYS FOR APPELLEES**

Susan M. Dimickele
Tara A. Aschenbrand
Meghan E. Hill
Squire, Sanders & Dempsey LLP
2000 Huntington Center
41 S. High Street
Columbus, Ohio   43215

William Michael Hanna
Squire, Sanders & Dempsey, LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio   44114

EILEEN A. GALLAGHER, J.:

{¶ 1} Sharon Johnson appeals from the decision of the trial court

granting the motion for summary judgment of defendants-appellees, Cleveland City School District, Sharon McDonald, Donna Bowen, and Clinton Faulkner. Johnson argues the trial court erred when it determined that her claims against the defendants-appellees were barred by the doctrine of issue preclusion. Finding no merit to this appeal, we affirm the decision of the trial court.

{¶ 2} As stated by this court in *Johnson v. Cleveland City School Dist.,* 8th Dist. No. 94214, 2011-Ohio-2778, 2011 WL 2409901, the facts of this case are as follows:

> Johnson began her employment as a school teacher with the district in 1989. Approximately a year prior to her employment with the district, Johnson was involved in an automobile accident and as a result was diagnosed with cervical myelopathy. The condition resembles the effects of a stroke or multiple sclerosis: if Johnson overexerts herself, her breathing becomes labored, she feels faint, her arm will "curl up," her legs become weak, and her muscles become fatigued.
>
> In 1993, Johnson's condition worsened to the point where she had difficulty walking, ascending stairs, and performing "activities of daily living." In August 2002, Johnson requested a 'special transfer' to an area of administration with a handicapped facility. Dr. Patrick Bray, an occupational medicine specialist, was retained by the district to evaluate Johnson.
>
> In a September 12, 2002 letter, Dr. Bray described Johnson's case as "fairly complex and unusual," and opined that she suffered from a "disability covered by the Americans With Disabilities Act (ADA)." Bray further opined that Johnson's

"ADA-covered disability does pose a direct threat of harm" to her. He concluded that:

> "The district may remove this threat with reasonable accommodations such as the following: '[ (1) ] no standing for more than one hour per day[;] [ (2) ] no continuous speaking[;] [ (3) ] alternate sitting, standing and walking [;] [ (4) ] minimal stairs[;] [and (5) ] use of ambulatory aids such as a cane, and under extreme circumstances, an[ ]electrical scooter as needed.'"

Johnson's transfer request was granted, and in 2004, the district assigned her to Adlai Stevenson Elementary School under principal Susan Hawthorne-Clay. Hawthorne-Clay gave the following responsi-bilities to Johnson: (1) assisting a special needs teacher; (2) tutoring groups of eight to 10 students; and (3) filling in on "whatever was needed." Johnson was given the title 'academic interventionist' while at Adlai Stevenson.

In the fall of 2005, principal Hawthorne-Clay transferred to Robert H. Jamison School and requested that Johnson transfer with her. The district allowed the transfer, and Johnson did grant writing, parent interventions, and supervision of the administrative office in Hawthorne-Clay's absence.

In the beginning of the 2006-2007 school year, appellee Sharon McDonald, a district administrator, visited Robert H. Jamison School and met Johnson for the first time. Johnson told McDonald that she held small reading groups and helped principal Hawthorne-Clay with discipline at times. According to Johnson, McDonald told her that she would be returning to classroom teaching, and would be assigned to a classroom on the second floor. [1] Johnson told McDonald of her medical restrictions, but McDonald insisted on the reassignment, despite the restrictions and the fact that the school's elevator was non-functional.

---

[1] The class was being taught by a substitute teacher at the time.

After her visit to the school, McDonald met with other administrators from the district, specifically appellees Faulkner and Bowen. They reviewed Johnson's personnel file, including the 2002 statement from Dr. Bray with the listed restrictions, and discussed the restrictions and accommodations.

The district thereafter met with Johnson and her union representative. Appellee Faulkner stated that he had reviewed Dr. Bray's report and believed that Johnson could work in a classroom. Johnson said that she had a "classroom exemption." Appellee Faulkner told Johnson that the district expected her to be a classroom teacher.

Johnson filed a union grievance. As part of the resolution of the grievance, Johnson was promised that she would be "provided support via an additional teacher and grade level staff person." Further, the school's elevator was supposed to be fixed and Johnson was to have a key to the elevator.

In a September 5, 2006 letter from principal Hawthorne-Clay to Johnson, Hawthorne-Clay informed Johnson that her assignment at Robert H. Jamison School had been changed "to assume the open 8th grade English-language arts position, per Ms. Sharon McDonald." Johnson reported to the English language arts class on September 7.

District administrators visited the class on September 8. The substitute teacher was in the front of the class and Johnson was in the back of the room working with a small group of students. The administrators spoke to Johnson in the hall. Johnson complained about having to climb the stairs and the temperature of the classroom, i.e., it was too hot. According to Johnson, McDonald told her, "[e]nough, you're going to teach this classroom," and that the substitute teacher was going to be reassigned. Johnson felt overwhelmed by heat and stress and left that day; she did not return to the school until January 8, 2007.

In September 2006, Johnson filed a complaint with the Equal

Employment Opportunity Commission ("EEOC") alleging a violation of her ADA rights.

In late October 2006, Johnson submitted to the district a leave of absence form with a letter from a Dr. Laura Shoemaker, which stated that Johnson was under her care and that she was unable to attend work "from September 8, 2006, until the resolution of her job requirements in accordance with her ADA restrictions."

In December 2006, the Civil Rights Commission issued a no probable cause ruling on Johnson's EEOC complaint. The district thereafter denied Johnson's request for leave and informed her that she was to report to her classroom assignment at Robert H. Jamison on January 8, 2007, and Johnson did. Johnson testified that the second-floor classroom was "sauna like," and she was without assistance to escort her students up and down the stairs. She felt physically unable to perform, and left. Johnson remained off work until February 8, 2007, and used accumulated sick time for her leave.

On January 9, 2007, the day after she left, Johnson requested a "fitness for duty" examination. Pursuant to the request, Johnson had another examination with Dr. Bray. In a February 2007 report, Dr. Bray opined as follows:

> "1. Dr. Johnson does presently suffer from a disability covered by the Americans With Disabilities Act (ADA). I want to say once again that this case is complex and unusual. However, I haven't the slightest doubt that her disability is appropriately covered by the ADA.

> "2. This ADA-covered disability does pose a direct threat of harm primarily to Dr. Johnson."

Bray concluded that Johnson could be reasonably accommodated with the same restrictions he provided in his September 2002 report, with the addition of "[n]o work environment with extreme heat, humidity, or cold temperatures; [and][s]he should not be required to verbally control resistant students that persists after

an initial warning[.]" The doctor explained that the last restriction was a "refinement of my previous recommendation that [Johnson] not engage in continuous speaking."

According to Dr. Bray, Johnson's "disability is permanent in nature." But he noted that "her physical limitations tend to vary, [and] she is certainly capable of being gainfully employed within the accommodations mentioned above."[2]

An April 27, 2007 report also described Johnson's disability as "permanent," and suggested the same restrictions as Dr. Bray.

In May 2007, Johnson and district officials met. By this time, Johnson had obtained a guidance license, and she brought documentation of that to the meeting and expressed interest in a guidance counselor position. She also brought documentation to show that she could be placed as a reading specialist or an administrator. Johnson testified that she obtained her guidance license specifically as a means to resolve her restrictions. During the meeting, Johnson also assured the district officials that she could maintain discipline even given her speaking restriction.

In a July 2007 letter to Johnson, the district informed her that it was "willing to continue to engage in the interactive process with [her,]" but that her speaking restriction was "problematic." The district concluded that the request for a speaking restriction was not reasonable and that it was therefore unable to accommodate it.

In a July 2007 letter, dated the day after the district's letter,

---

[2]Johnson also submitted the reports from two Cleveland Clinic doctors in opposition to the district's summary judgment motion. A January 2007 report concluded that Johnson "suffers from a disability covered by the Americans with Disabilities Act[, and that the disability] does pose direct threat of harm" to her. The report also described the disability as "permanent in nature," and suggested the same restrictions as Dr. Bray's February 2007 report, with the exception of the speaking restriction.

Johnson reiterated her ability to maintain discipline with her speaking restriction. She further expressed her interest in being a guidance counselor, and stated that she had applied for a guidance counselor position in the district in the spring of 2007.

On Friday, August 17, 2007, appellee Bowen called Johnson and told her that there were three open teaching positions. Johnson expressed concern as to whether any of the positions were consistent with her restrictions and reminded Bowen that she had applied for a guidance counselor position. However, according to Johnson, she accepted one of the positions.

A short time later that same day, Bowen called Johnson again and told her that she needed to provide that district with medical certification regarding her ability to work. According to Johnson, Bowen told her that the position she had just accepted was outside of her restrictions and so she needed certification that the restrictions had been removed. According to the district, certification is required whenever an employee is returning from leave and the request was the district's standard procedure.

The district terminated Johnson in a letter dated August 21, 2007 (Tuesday). The letter stated that Johnson "declined the position without speaking to [her] physician[,]" and that it had no positions available to accommodate her restrictions. Johnson denied declining the position and, in fact, it was her understanding that Bowen was going to call her on Monday, August, 20 to discuss the situation further. Bowen never called and the next communication Johnson received from the district was the termination letter.

{¶ 3} Prior to her termination, Johnson filed a complaint in federal district court on May 21, 2007. Johnson alleged a violation of the Americans with Disabilities Act, as well as Ohio's civil rights statute, breach of contract, and intentional infliction of emotional distress. She named the District as a defendant, as well as Sharon McDonald, Supervisor of Special Projects;

Donna Bowen, Supervisor of Assignments; and Clinton Faulkner, Deputy Chief of Human Resources, in their individual, and official, capacities.

**{¶ 4}** The district court granted defendants-appellees' motion for partial summary judgment on the breach of contract claim. After discovery, defendants-appellees filed another motion for summary judgment on the remainder of Johnson's claims. The district court found that Johnson had not shown that the District had failed to accommodate her in any of the ways provided in Dr. Bray's 2002 list of accommodations prior to January 11, 2007. It also found that Johnson had failed to exhaust any alleged failures after January 11, 2007, because she had not filed an Ohio Civil Rights Commission charge relating to them. Lastly, it found there was no causation evidence to support a retaliatory discharge claim. Accordingly, in granting the motion as it related to the federal claims, the district court declined to "exercise pendant jurisdiction over the remaining state claims." The district court stated that "[n]othing in this Memorandum Opinion and Order should be construed to prevent Dr. Johnson from re-filing her state claims in an appropriate Ohio court to the extent such claims are permitted under Ohio law." Johnson appealed.

**{¶ 5}** In February 2009, while her federal appeal was pending, Johnson filed this action against the defendants-appellees alleging "multiple

violations of 4112 of the Ohio Revised Code." Johnson based her lawsuit on the same facts and issues alleged in the prior federal action. She also asserted a claim for intentional infliction of emotional distress.[3]

{¶ 6} In August 2009, the Sixth Circuit Court of Appeals affirmed in part and reversed in part, the decision of the federal district court. *See Johnson v. Cleveland City School Dist.*, 344 Fed. Appx. 104 (6th Cir.2009). The Sixth Circuit upheld the dismissal of all claims alleging a failure to accommodate prior to January 11, 2007, "finding that placement of Johnson in the regular classroom on the second floor at that time did not violate any of the accommodations then reported (based on Dr. Bray's 2002 report)." *Id.* The Sixth Circuit also affirmed the dismissal of Johnson's retaliatory termination claim. However, the court determined that the district court improperly limited the following claims because Johnson had exhausted the administrative proceedings: (1) failure to accommodate after January 11, 2007; (2) discriminatory discharge; and (3) retaliatory denial of accommodations after January 11, 2007.

{¶ 7} In September 2009, in this case, defendants-appellees filed a motion for summary judgment, which Johnson opposed. In October 2009,

---

[3]The District filed a motion for judgment on the pleadings relative to the intentional infliction of emotional distress claim, and the trial court granted the

the trial court summarily granted the defendants-appellees' motion. Johnson appealed. In a decision issued June 9, 2011, this court first determined that Johnson was not barred from relitigating her claims in state court because of the federal court findings by the doctrine of res judicata. *See Johnson,* 2011-Ohio-2778. Specifically, this court determined that, at the time the trial court granted the defendants-appellees' motion for summary judgment, the federal court had not yet issued a final judgment on the merits of Johnson's state claims. *Id*. The court then addressed the substance of Johnson's case and reversed the trial court's grant of summary judgment, finding the existence of genuine issues of material fact as to whether Johnson was a qualified individual with a disability; whether the District reasonably accommodated Johnson; and whether Johnson rejected the job offered to her by the District. *Id*.

{¶ 8} During the pendency of the appeal in state court, the defendants-appellees filed an amended motion for summary judgment in the remanded action in federal district court, which the district court granted. *See Johnson v. Cleveland City School Dist.,* N.D. Ohio No. 1:07-CV-1610 (Feb. 5, 2010). The district court first concluded that while the Sixth Circuit Court of Appeals had determined that Johnson exhausted a retaliatory

motion.

failure to accommodate the claim in her second OCRC/EEOC charge, she did not actually raise any such claim in her complaint. Thus, "no claim for retaliatory failure to accommodate is part of this action, and no disposition on such claim is possible or proper, regardless of whether the issue was presented in the OCRC/EEOC charges filed by the Plaintiff." *Id*.

{¶ 9} The district court then addressed Johnson's failure to accommodate the claim. The court found that while Johnson had established a genuine issue of fact as to whether she has a recognized disability, she failed to establish that she had requested an objectively reasonable accommodation that the District had refused. *Id*. The district court also addressed her claim for discriminatory discharge and, once again, determined that Johnson had proposed no reasonable accommodation that would allow her to perform the essential element of discipline, and thus failed to satisfy the qualification element of her claim. The court thus dismissed Johnson's remaining claims.[4]

{¶ 10} On remand with the Cuyahoga County Court of Common Pleas, and with the benefit of the federal district court's decision issued February 5,

---

[4]Johnson appealed the district court's grant of summary judgement. In an opinion issued November 15, 2011, the Sixth Circuit Court of Appeals affirmed the judgment of the district court. *See Johnson v. Cleveland City Sch. Dist.*, 6th Cir. No. 10-3267, 2011 WL 5526465 (Nov. 15, 2011).

2010, the defendants-appellees filed a motion for summary judgment on June 27, 2011. Defendants-appellees argued that Johnson was barred from relitigating her claims in the court of common pleas based on the doctrine of issue preclusion. Johnson opposed this motion, however, on July 20, 2011, the trial court granted defendants-appellees' motion for summary judgment. Johnson appeals, raising the following assignment of error:

> **The trial court erred in granting Defendants-Appellees' Motion for Summary Judgment Based on Issue Preclusion.**

{¶ 11} Under the doctrine of res judicata, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim or issue arising out of the same transaction or occurrence that was the subject matter of a previous action. *Smith v. Bd. of Cuyahoga Cty. Bd. of Commrs.,* 8th Dist. No. 86482, 2006-Ohio-1073, 2006-WL-562149; *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226. A "transaction" is a "common nucleus of operative facts." *Id.,* quoting 1 Restatement of the Law 2d, Judgments, Section 24, Comment b (1982).

{¶ 12} Further, it does not matter that the court that previously decided the claim is of a different jurisdiction than the court currently deciding the claim. *Smith.* We have said that, to the extent to which a federal court judgment operates as res judicata in the federal court, it also operates as res

judicata in Ohio state courts. *Smith*; *Powell v. Doyle*, 8th Dist. No. 72900, 1998 WL 703012 (Oct. 8, 1998), citing *Horne v. Woolever*, 170 Ohio St. 178, 163 N.E.2d 378 (1959). Further, the Ohio Supreme Court has held that a claim litigated to finality in the United States District Court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in federal court, and there is presently no issue of party identity or privity. *Smith*; *Rogers v. Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387 (1986). Therefore, if Johnson's claims were already decided in federal court, she is barred from raising the same claims in state court.

{¶ 13} In order for a claim to be barred on the grounds of res judicata, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits. *Smith*; *Omlin v. Kaufmann & Cumberland Co., L.P.A.*, 8th Dist. No. 82248, 2003-Ohio-4069, 2003 WL 21757756, citing *Horne*, supra.

{¶ 14} In the present case, both the parties and the claims are identical to those in the federal court case. Additionally, the federal district court's February 5, 2010 decision represents a final judgment on the merits of

Johnson's state claims.[5]   Therefore, we conclude that Johnson's claims are barred by the doctrine of res judicata, and the trial court's grant of summary judgment is affirmed.   As will be explained in greater detail below, the federal court did a thorough analysis of Johnson's state claims.

{¶ 15} As it related to Johnson's failure to accommodate claims prior to January 11, 2007, the district court dismissed all such claims, and the court of appeals affirmed the dismissal.   In so doing, the Sixth Circuit noted that:

> The School District therefore provided Johnson with a reasonable accommodation in response to the only accommodation requests before January 11, 2007 that were based on Johnson's disability.   Accordingly, we hold that the district did not err in granting summary judgment to the School District on Johnson's failure to accommodate claim based on events before January 11, 2007.   *Johnson*, (6th Cir.)

With respect to her retaliatory termination claim, the Sixth Circuit Court of Appeals held:

> The district court found that there was no causal connection between Johnson's protected activity and her termination.   We agree.   In order to establish causation, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.   *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).   In rare circumstances, temporal proximity may be enough to establish an inference of causation.   *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516,

---

[5]Any argument otherwise is further put to rest by the Sixth Circuit's opinion released November 15, 2011, affirming the federal district court's grant of summary judgment.   *See Johnson v. Cleveland City Sch. Dist.*, 6th Cir. No. 10-3267, 2011 WL 5526465 (Nov. 15, 2011).

525 (6th Cir.2008). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Id. The burden of establishing causation is not onerous, but it does rest on the plaintiff. *Nguyen*, 229 F.3d at 563.

Over a year passed between Johnson's first OCRC charge and her termination, and three months had passed between the filing of this lawsuit and her termination. Standing alone, neither act is sufficiently close in time to Johnson's termination to warrant an inference of causation. See *Mickey*, 516 F.3d at 525. As there is no other evidence that links her termination to her OCRC charge or to this lawsuit, Johnson has not established a causal connection for her prima facie case.

*Id.*

{¶ 16} On remand, the district court addressed Johnson's failure to accommodate claims. Johnson's list of accommodations read as follows: no standing for more than one hour per day; alternate sitting, standing, and walking; no continuous speaking; use of ambulatory aids as needed; minimal stairs climbing; no extreme temperatures; not to be required to verbally control resistant behavior in students that persists after an initial warning; and other position as an academic interventionist or a school counselor.

{¶ 17} As stated above, the district court found that while Johnson had established a genuine issue of fact as to whether she had a recognized disability, she failed to establish that she had requested an objectively

reasonable accommodation that the District had refused. *See Johnson*, N.D. Ohio No. 1:07-CV-1610 (Feb. 5, 2010). The court determined that there was no evidence to demonstrate she was denied accommodations regarding standing, sitting, walking, use of ambulatory aids, minimal stair climbing, or continuous speaking restrictions. *Id.* As for the temperature restrictions, the court noted that there was no actual record of Johnson asking anyone in authority to address the temperature and climate control issues after her disability restrictions were amended to include a medical need for climate control. *Id.* Moreover, the court determined that, after January 11, 2007, there was no evidence that Johnson would have been required to teach in a classroom that was not climate controlled. *Id.* Addressing Johnson's argument that she should have been offered a small-group or counseling position, the court stated, "[t]here is no evidence that any doctor has ever indicated that Dr. Johnson could not teach a full size class provided her other restrictions were met. There is absolutely no evidence to show that Plaintiff's disability required an accommodation assigning her to teach only small groups of students, or assigning her to a position as a school counselor." *Id.*

{¶ 18} Lastly, the court determined that Johnson's last requested accommodation — prohibiting Johnson from a position where she would need

to "verbally control resistive students" — was not a reasonable accommodation for a teacher or a counselor at an elementary or middle school. *Id*. The court stated that all teachers and counselors must deal with students even when misbehaving, and therefore must be "physically, mentally, and emotionally capable of managing and controlling students in those circumstances." *Id*. Therefore, the district held that the ability to control, manage, and discipline students is an "essential function" of a teacher, tutor, or counselor. Any request for an accommodation that does not require her to do this task is not reasonable, the court said, and insofar as the doctors agreed she cannot, she is not qualified to perform the function of teacher or counselor. *Id*. Therefore, the court dismissed all of Johnson's claims for failure to accommodate, and the Sixth Circuit affirmed. *See Johnson,* N.D.Ohio No. 1:07-CV-1610 (Feb. 5, 2010); *Johnson,* 6th Cir. No. 10-3267 (Nov. 15, 2011).

{¶ 19} The district court then addressed Johnson's claim for discriminatory discharge. It again found that the claimed restriction against "verbally controlling" students made Johnson not qualified for her position. *Id*. It noted that while Johnson asserted that "yelling and shouting" are not necessary for her position, the letters submitted from her doctors did not limit the disability restrictions to "yelling and shouting";

instead, two doctors put forth restrictions that were "far broader" that refer "to any form of verbal control, without regard to volume or intensity." *Id.*

> It is unreasonable to believe that a teacher, counselor, or other school employee charged with caring for and working with children can maintain control and discipline among their students if they cannot "verbally control" students beyond giving an initial warning. *Id.*

**{¶ 20}** The court therefore found that Johnson had proposed no reasonable accommodation that would allow her to perform the essential element of discipline, and thus failed to satisfy the qualification element of her claim. The district court dismissed Johnson's claim, and the Sixth Circuit affirmed. *Id.*; *Johnson*, 6th Cir. No. 10-3267 (Nov. 15, 2011).

**{¶ 21}** Thus, based on the outline above, the federal district court squarely litigated and determined the facts at issue in Johnson's state cause of action. Therefore, we conclude that Johnson's claims are barred by the doctrine of res judicata, and the trial court's grant of summary judgment is affirmed.

**{¶ 22}** Johnson's sole assignment of error is overruled.

**{¶ 23}** The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry

this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR